J-S71018-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CREATIVE RETAIL COMMUNICATIONS, LLC D/B/A UMIX, | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : | |
| v. | : : : | |
| | : | No. 1710 EDA 2018 |
| JASON KINSER AND ONE NINETEEN WEST MAIN, LLC | : : | |

Appeal from the Order Entered May 10, 2018
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
2017-C-2416

BEFORE: PANELLA, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:                        **FILED FEBRUARY 28, 2019**

Appellant, Creative Retail Communications, LLC d/b/a UMix, appeals from the May 10, 2018 Order entered in the Lehigh County Court of Common Pleas sustaining the Preliminary Objections filed by Appellees, Jason Kinser and One Nineteen West Main, LLC, and dismissing Appellant's Defamation Complaint for lack of personal jurisdiction. After careful review, we affirm.

Appellee Jason Kinser is a resident of La Grange, Kentucky. Appellee One Nineteen West Main, LLC is a Kentucky limited liability company with its principal place of business in La Grange, Kentucky. Appellant is a Pennsylvania limited liability company with a principal place of business in Allentown, Lehigh County.

On February 17, 2017, Appellees used Appellant's UMix Media website to purchase a music player and music subscription service from Appellant.

Appellees also entered into a separate subscriber agreement ("Subscriber Agreement") with UMix Media for the use of UMix's music subscription service.[1] To fill the order, Appellant shipped invoices and the music player to Appellees from Appellant's address in Allentown, Lehigh County. Appellees received the music player from Appellant, but apparently had difficulty installing it. Appellees unsuccessfully attempted to contact Appellant for customer service and product support. Consequently, on February 22, 2017, Appellees posted a "one-star" review of Appellant's product on Google.[2]

Most relevant to this appeal, the following month, Appellees posted an online review of Appellant's business on the website "www.companies-reviews.com" describing their difficulties in installing the music player and in contacting Appellant for assistance. In this review, Appellees wrote that Appellant provided "ZERO customer support" and is a "TOTAL SCAM." The review also states by way of "update" that "[a]fter posting a review on Google, someone from the company called me [and] told the employee that answered

_____

[1] The terms of the Subscriber Agreement pertained only to Appellees' music services subscription and did not pertain to Appellees' purchase of a music player.

[2] Appellant did not attach a screenshot of the alleged one-star Google review to its Amended Complaint.

that I was acting like a child for posting a negative review, and that they didn't want my business anyway."[3]

On December 18, 2017, Appellant filed an Amended Complaint against Appellees, raising claims of Defamation, False Light Invasion of Privacy, and Commercial Disparagement.

With respect to the issue of jurisdiction over Appellees, Appellant averred in the Amended Complaint that Appellant's address in Allentown, Lehigh County appears on Appellant's website and the invoices sent to Appellees. Amended Complaint, 12/18/17, at ¶ 9. Appellant concluded, therefore, that Appellees knew or should have known that Appellant is located in Pennsylvania. *Id.* Appellant also averred that, by using Appellant's website, purchasing equipment and a subscription agreement from Appellant, and receiving equipment mailed from Pennsylvania, Appellees transacted business in the Commonwealth of Pennsylvania. *Id.* at ¶ 8. Last, Appellant averred that the harm he suffered occurred in the Commonwealth of Pennsylvania. *Id.* at ¶ 40.

On December 27, 2017, Appellees filed Preliminary Objections on the bases of (1) lack of personal jurisdiction pursuant to Pa.R.C.P. No. 1028(a)(1); (2) failure to plead a *prima facie* case of Defamation; (3) failure to plead a *prima facie* case of False Light Invasion of Privacy; (4) failure to plead a *prima*

---

[3] Appellant did not specifically allege in the Amended Complaint that Appellees posted these negative reviews on the website www.companies-reviews.com, but Exhibit D to Appellant's Amended Complaint is a screenshot of Appellees' review on that website. *See* Amended Complaint Exhibit D.

*facie* case of Commercial Disparagement; (5) failure to plead facts sufficient to warrant the imposition of punitive damages; and (6) failure to plead facts sufficient to warrant the imposition of attorney's fees.

Relevant to the instant appeal, Appellees noted that Appellant admitted that Appellee Kinser is a Kentucky resident and that Appellee One Nineteen West Main, LLC is a business with its principal place of business in Kentucky. Brief in Support of Preliminary Objections, 12/27/17, at 3 (citing Complaint at ¶¶ 2-3). Appellees further noted that Appellant conceded that Appellees posted the review that is the subject of this lawsuit from a computer in Kentucky. *Id.* (citing Complaint at ¶ 17). Appellees highlighted that Appellees failed to plead that the incident arose in Pennsylvania or that Appellees maintained minimum contacts with Pennsylvania. *Id.* Thus, Appellees argued, Appellant failed to satisfy its burden of proving that Appellees are subject to personal jurisdiction in Pennsylvania. *Id.*

On April 19, 2018, the trial court held a hearing on Appellees' Preliminary Objections. On May 10, 2018, the court sustained the Preliminary Objections and dismissed Appellant's Amended Complaint, concluding that Appellant had failed to establish that Appellees are subject to personal jurisdiction in Pennsylvania.

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant claims the trial court erred in dismissing the Amended Complaint on the basis of lack of personal jurisdiction. Appellant's Brief at 5.

"Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court." **De Lage Landen Fin. Servs., Inc. v. Urban P'ship, LLC**, 903 A.2d 586, 589 (Pa. Super. 2006) (citation omitted). Those substantive legal standards are as follows:

> When preliminary objections, if sustained, would result in the dismissal of an action, such objections should be sustained only in cases which are clear and free from doubt. Moreover, when deciding a motion to dismiss for lack of personal jurisdiction the court must consider the evidence in the light most favorable to the non-moving party. A defendant making a challenge to the court's personal jurisdiction has, as the moving party, the burden of supporting its objection to jurisdiction.

**Id.** at 589 (quoting **King v. Detroit Tool Co.**, 682 A.2d 313, 314 (Pa. Super. 1996) (citations omitted)). "[O]nce that party has provided proof, the burden then shifts to the non-moving party to adduce evidence demonstrating there is a basis for asserting jurisdiction over the moving party." **Haas v. Four Seasons Campground, Inc.**, 952 A.2d 688, 691 (Pa. Super. 2008).

**Jurisdiction**

"Under 42 Pa.C.S. §§ 5301-5329, Pennsylvania courts may exercise two types of personal jurisdiction over a non-resident defendant." **Nutrition**

- 5 -

*Mgmt. Servs. Co. v. Hinchcliff*, 926 A.2d 531, 536 n.2 (Pa. Super. 2007). The first type, general jurisdiction, "is founded upon the defendant's general activities within the forum, as evidenced by systematic contacts with the state." *Id.* The second type, specific jurisdiction, "is premised upon the particular acts of the defendant that gave rise to the underlying cause of action." *Id.*

With respect to the appropriate exercise of personal jurisdiction in Pennsylvania, this Court has explained:

> Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. **Because due process may permit specific jurisdiction based solely on single or occasional acts purposefully directed at the forum, it is narrow in scope, limiting a cause of action to the extent that it arises out of or relates to the very activity that establishes jurisdiction**.

*Mendel v. Williams*, 53 A.3d 810, 817 (Pa. Super. 2012) (citations and quotation marks omitted; emphasis added).

With respect to general jurisdiction, the *Mendel* Court observed:

> Alternatively, general jurisdiction involves circumstances, or a course of conduct, from which it is proper to infer an intention to benefit from, and thus an intention to submit to, the laws of the forum State. For an individual, **the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home**. Thus, general jurisdiction may be exercised against foreign corporations when their affiliations with the forum State are so continuous and systematic as to render them essentially at home there.

*Id.* Thus, "a state that has general jurisdiction may adjudicate both matters that originate within the State and those based on activities and events elsewhere." *Id.*

Additionally, a state may also have general jurisdiction over a defendant owing to the defendant's consent to jurisdiction. *See* 42 Pa.C.S § 5301(a) (conferring jurisdiction due to "consent, to the extent authorized by the consent"); *Webb-Benjamin, LLC, v. International Rug Group, LLC*, 192 A.3d 1133, 1139 (Pa. Super. 2018) (reiterating that consent is a valid method of obtaining personal jurisdiction).

Here, Appellant argues that Appellees are subject to both specific and general jurisdiction.

**<u>Specific Jurisdiction</u>**

Appellant claims that Appellees are subject to specific jurisdiction based on their minimum contacts with Pennsylvania, including purchasing a music player and music subscription service through Appellant's website, entering into the Subscriber Agreement, and receiving invoices and the music player from Appellant who Appellees knew was located in Pennsylvania. Appellant's Brief at 12. Appellant further argues that the harm caused by Appellees occurred in Pennsylvania.[4] *Id.* at 12, 13. Appellant claims that the Subscriber Agreement established jurisdiction in Lehigh County or in the Middle District of Pennsylvania. *Id.* at 12 (citing Subscriber Agreement at ¶ 18). Appellant

---

[4] As Appellees emphasize, Appellant does not argue that the incident arose in Pennsylvania.

- 7 -

also supports its minimum-contacts claim by noting that Appellees admitted that they attempted to contact Appellant by calling, emailing, and sending messages via Facebook. *Id.* at 13. Conceding that a contract alone does not necessarily establish minimum contacts, Appellant argues that the totality of the parties' dealings establish the requisite minimum contacts to confer personal jurisdiction over Appellees. *Id.*

Appellees argue that Pennsylvania does not have specific jurisdiction over them. They dispute that their contacts with Pennsylvania establish minimum contacts for specific jurisdiction purposes. Appellees' Brief at 5-14.

To determine "whether to exercise specific personal jurisdiction over an out-of-state defendant who made an allegedly defamatory statement, we first turn to the effects test [set forth] in *Calder v. Jones*, 465 U.S. 783 (1984)." *Gorman v. Jacobs*, 597 F. Supp. 2d 541, 546 (E.D. Pa. 2009).[5] The *Calder* "Effects Test" requires the plaintiff to show: (1) the defendant committed an intentional tort; (2) the forum was the focal point of the harm suffered by the plaintiff as a result of the tort; (3) the forum was the focal point of the tortious activity in the sense that the tort was "expressly aimed" at the forum. *Id.* at 547, *quoting* *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998). "Because one can access web sites from anywhere, the defendant's

---

[5] We note "decisions of the federal district courts … are not binding on Pennsylvania courts, even when a federal question is involve[d]." *Kubik v. Route 252, Inc.*, 762 A.2d 1119, 1124 (Pa. Super. 2000) (citation omitted). Nevertheless, these decisions are persuasive authority and helpful in our review of the issue presented.

Internet activity—whether it be web site operation or use—must evince an **intent to interact with the forum** to justify the exercise of personal jurisdiction." *Gorman*, 597 F. Supp. 2d at 548 (citation omitted, emphasis added). In other words, "[s]omething about the web site must suggest to the user that residents of the forum state are the target audience." *Id. See also Colt Plumbing Co., Inc. v. Boisseau*, 645 A.2d 1350, 1356 (Pa. Super. 1994) (citing *Calder* and reiterating that as long as a "commercial actor's efforts are 'purposefully directed' toward residents of another State, . . . the absence of physical contacts alone cannot defeat personal jurisdiction here.").

Following its review of the pleadings and a hearing on Appellees' Preliminary Objections, the trial court, analogizing this case to *Gorman*, *supra*, concluded that Appellant failed to meet its burden to prove that Appellees evinced the intent to interact with Pennsylvania through their internet activity.[6] In particular, the court found that Appellant had not satisfied the third prong of the *Calder* "Effects Test," *i.e.*, that Appellees tortious activity was "expressly aimed" at Pennsylvania. Trial Ct. Op., 7/16/18, at 6. In reaching this conclusion, the court emphasized that the website used by Appellees—www.companies-reviews.com—did not indicate to reviewers like Appellees that reviews would be directed to any particular state,

---

[6] In *Gorman*, the United States District Court for the Eastern District of Pennsylvania dismissed the plaintiff's claims with prejudice after determining that out-of-state defendants were not subject to personal jurisdiction in Pennsylvania when they posted allegedly defamatory statements on a national website and did not specifically direct their statements to Pennsylvania. *Gorman*, 597 F. Supp. 2d at 550-51.

did not require reviewers to identify the state in which the business being reviewed is located, and did not direct Appellees' review to Pennsylvania. *Id.* The trial court also noted that Appellees' review did not mention where Appellant is located or where it conducts business. *Id.*

Following our review of the Amended Complaint, we agree with the trial court that Appellant failed to allege sufficient facts demonstrating that Appellees are subject to the specific jurisdiction of the Pennsylvania courts. In particular, and as found by the trial court, Appellant failed to establish the third prong of the ***Calder*** "Effects Test," *i.e.*, that Appellees "expressly aimed" their allegedly tortious activity at Pennsylvania. We, thus, conclude that the trial court did not err as a matter of law in sustaining Appellees' Preliminary Objections on the basis of lack of specific jurisdiction.

**General Jurisdiction**

Appellant also claims that Appellees consented to general jurisdiction in Pennsylvania by entering into the Subscriber Agreement, which, as noted above, Appellant argues established jurisdiction in Lehigh County or in the Middle District of Pennsylvania. Appellant's Brief at 16 (citing Subscriber Agreement at ¶ 18; 42 Pa.C.S. § 5301(a)). In particular, the "Governing Law" section of the subscriber agreement provides that "[a]ll legal actions relating to this Agreement shall be brought in the Court of Common Pleas of Lehigh County or the Middle District of Pennsylvania depending on which Court has jurisdiction." Subscriber Agreement at ¶ 18.

Appellees dispute that the "Governing Law" provision in the Subscriber Agreement establishes general jurisdiction over them. In support of this position, they emphasize that the "Governing Law" provision only applies to "legal actions related to this agreement," *i.e.*, to breach of contract actions, and not to tort claims of the kind alleged in the instant action. Appellees' Brief at 14-18 (quoting Subscriber Agreement at ¶ 18).

As noted ***supra***, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." ***Mendel***, 53 A.3d at 817. In order to support a finding of general jurisdiction, there must be evidence of "continuous and systematic contacts with the state." ***Efford v. Jockey Club***, 796 A.2d 370, 373 (Pa. Super. 2002).

Appellees contend that there is no evidence to support a finding of general jurisdiction. We agree. Appellees do not maintain a place of business or registered office in Pennsylvania, do not conduct business in Pennsylvania, and could not reasonably anticipate being brought into court in Pennsylvania. Therefore, there is no evidence to support a finding that Appellees have engaged in continuous and systematic contacts within the Commonwealth of Pennsylvania such as would be required in order to find that the courts of this Commonwealth may exercise general jurisdiction over Appellees.

Appellant claims, in the alternative, that Appellees consented to jurisdiction in Pennsylvania by virtue of entering into the Subscriber Agreement. Appellant's Brief at 15-16. Appellees dispute such consent,

arguing that the subject matter of Appellant's Amended Complaint falls outside the scope of the Subscriber Agreement's jurisdiction clause. Appellees' Brief at 15-18.

The interpretation of the phrase "all legal actions related to this agreement shall be brought in the Court of Common Pleas of Lehigh County or the Middle District of Pennsylvania" is at issue here. Thus, the question is whether Appellant's claims of Defamation, False Light Invasion of Privacy, and Commercial Disparagement are "related to" the services promised to Appellees in the Subscriber Agreement.

The trial court concluded that Appellant's "lawsuit is not related to the Subscriber Agreement." Trial Ct. Op. at 8. It noted that Appellees "did not consent to being sued in Pennsylvania for torts unrelated to the services or payment for music as outlined in the music service agreement." *Id.* at 8-9.

We agree. Although the Subscriber Agreement formed the basis of the ongoing relationship between the parties, Appellant's Defamation, False Light Invasion of Privacy, and Commercial Disparagement claims are independent from the provision of music services as outlined in the Subscriber Agreement. *See Morgan Trailer Mfg. Co. v. Hydraroll, Ltd.*, 759 A.2d 926, 931-32 (Pa. Super. 2000) (where this Court disagreed with the trial court that the plaintiff's tort claims arose from or were related to the parties' contract simply because "absent the contract, all counts would fail."); *Autochoice Unlimited, Inc. v. Avangard Auto Finance, Inc.*, 9 A.3d 1207, 1212-13 (Pa. Super. 2010) (where this Court discussed the "gist of the action" doctrine and concluded

that a forum selection clause contained in a contract was applicable because the success of the plaintiff's tort claims were dependent upon its proof of a breach of the contract). Thus, merely because the parties entered into a contract does not mean the contract's terms govern all disputes arising between them. This is especially true where, as here, the success of Appellant's claims is not dependent on Appellant proving a breach of the Subscriber Agreement. Accordingly, Appellant has failed to establish general jurisdiction over Appellees.

Given that Appellant has not met its burden of proving that Pennsylvania may assert personal jurisdiction over Appellees, the trial court did not err as a matter of law in sustaining Appellees' Preliminary Objections and dismissing Appellant's Amended Complaint.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/19