J-S08032-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DOMINICK DILBERTO | : | |
| | : | |
| Appellant | : | No. 1626 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 3, 2024
In the Court of Common Pleas of Pike County Criminal Division at No(s):
CP-52-CR-0000188-2023

BEFORE:  DUBOW, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:               **FILED JUNE 6, 2025**

Appellant, Dominick Dilberto, appeals from the judgment of sentence imposed by the Pike County Court of Common Pleas after a jury found him guilty of simple assault.[1]  He challenges the sufficiency of the evidence for his conviction, arguing that the simple assault verdict was inconsistent with the jury's acquittal of related charges for terroristic threats and recklessly endangering another person.[2]  Upon review, we affirm.

At around 12:30 p.m. on March 9, 2023, nineteen-year-old Javin Damscus Frank was at a Planet Fitness gym in Matamoras Borough in Pike County, Pennsylvania.  **See** N.T. Trial, 3/18/24, 55-56.  While working out, he

_____

*Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2703(a)(3).

[2] 18 Pa.C.S. §§ 2706(a)(1) and 2705, respectively.

saw, through a window, Appellant push a shopping cart into Franks's car's bumper. *Id.* at 57, 62-63. Frank left the gym and knocked on the front driver's side window of Appellant's car. *Id.* at 57. Appellant exited his car and said, "What the hell, get the fuck away from my car. What are you doing?" *Id.* Frank responded, "Sir, you just pushed a cart into my car." *Id.* Appellant spit in Frank's face. *Id.*; *see also id.* at 92 (Frank on cross-examination: "He spit one time, but the spit hit my face and my shirt."). Frank took out his phone and walked behind Appellant's car to take a photograph of his license plate. *Id.* at 57. Appellant said, "I am going to steal your fucking phone," before reentering his car. *Id.* at 57-58. Appellant also made threats to "fuck [Frank] up." *Id.* at 58. Frank stood in front of Appellant's car while he called 911. *Id.* While Frank was waiting there, Appellant "ke[pt] trying to bump [Frank] with his car bumper, accelerating and hitting [Frank's] legs and [his] shin." *Id.* Appellant then put his car into reverse and sped away at a high rate of speed after his car contacted an unidentified man. *Id.* at 58, 101. Police officers subsequently responded to Frank's location. *Id.* at 58.

Teresa Foley was an eyewitness to the events in question. *See* N.T. Trial, 3/18/24, 109-10. She saw the two men arguing behind an unoccupied car that was "parked like in the middle of the road." *Id.* at 110. She heard one of the men say to the other one, "I will F you up," with the other man responding, "Oh, I just want to know why you tapped my car," during their continuing argument. *Id.* She then saw "the other gentleman spit on the other young boy." *Id.* She heard the spit's recipient say, "I'm calling 911,

you just spit on me, you can't spit on me," and the other man tried to get in his car to leave before the spit's recipient went to the front of the car to prevent it from leaving. *Id.* She saw the man in the car "drove and kept tapping [the other guy] with his vehicle." *Id.* As the one man was trying to call 911, she heard the other man tell him, "I'll mess you up, get out of the way … I'll F you up." *Id.* at 111. She warned the man "backing up after he was tapped" by the car, by telling him, "Please get out of the way, I think he is going to run you over." *Id.* at 110-11. At that point, she saw the other man "tried to reverse to get out of the way without looking." *Id.* at 111.

Frank provided responding police officer, Deputy Chief Eric Stewart, with a photograph of Appellant's license plate. *See* N.T. Trial, 3/18/24, 58, 131, 138. Deputy Chief Stewart spoke with Foley and Frank at the scene. *Id.* at 132-33, 135. After he passed along information about Appellant's vehicle to his fellow officers, Deputy Chief Stewart traveled to the Borough of Milford where Appellant's car was stopped. *Id.* at 134, 137-39. He explained to Appellant that there was an incident at the Westfall Town Center, and Appellant "acted like he really was not aware of" it. *Id.* at 141. Appellant questioned the deputy chief about whether he knew how to do his job and asked him whether he knew who the sheriff was and about whether he knew another person. *Id.* at 141. Deputy Chief Stewart explained to Appellant that he was being stopped. *Id.* at 142. Appellant got out of his car, said that "he didn't do nothing," and stated that "it was the other guy," despite formerly

acting unaware of why he was being stopped. *Id.* at 142. The police then placed Appellant into their custody. *Id.*

Appellant proceeded to be tried by a jury on May 18-19, 2024. The prosecution presented the live testimony of Frank, Deputy Chief Stewart, and another responding police officer, Officer Victor Perez, along with the preliminary hearing testimony of Foley, who had passed away prior to the trial. The Commonwealth played portions of body camera footage from Deputy Chief Stewart and Officer Perez. *See* N.T. Trial, 3/18/24, 144-45, 167-68. Appellant presented the testimony of his mother, which addressed the condition of her car that he had been using and identified dents and scuffs on the car that had not been previously present on the vehicle. *Id.* at 176-79. After reviewing the evidence presented, the jury found Appellant guilty of simple assault and not guilty of terroristic threats and recklessly endangering another person. *See* N.T. Trial, 3/19/24, 67; Jury Verdict Slip, 3/19/24, 1-2. Sentencing was deferred for the preparation of a pre-sentence investigation report. *See* Order (sentencing scheduling), 3/19/24, 1.

Appellant filed a counseled pre-sentence motion requesting the trial court to dismiss the case or otherwise enter a not-guilty verdict because "[t]he verdict was contradictory or not in conformity" and "[t]he evidence did not sustain the verdict." Motion to Dismiss or Enter a Not Guilty Verdict, 3/28/24, 1. The trial court denied that motion on April 2, 2024. *See* Order (motion to dismiss or enter a not guilty verdict), 4/3/24, 1. Appellant thereafter filed, *pro se*, a second pre-sentence motion, requesting an arrest of judgment,

alleging that that the jury's verdict was inconsistent and asserting that he could not be simultaneously guilty of simple assault and not guilty of recklessly endangering another person. *See* Motion in Arrest of [Judgment], 4/5/24, ¶¶ 4-7 ("If there was no '[t]hreats made' nor '[r]eckless acts[,]' one could not simply be found guilty of '[b]y physical menace' which that element of said crime would be proven by M2 [r]eckless [e]ndangerment."). The trial court denied that motion on April 8, 2024. *See* Order (motion in arrest of judgment), 4/8/24, 1.

On May 3, 2024, the trial court sentenced Appellant to four to twenty-three and one-half months' imprisonment, with a credit for time served of twenty-nine days, and an order to Appellant's counsel to file a petition for parole "no less than ten (10) days prior to [the service of Appellant's] minimum period of incarceration." Order (sentencing), 5/3/24, 1-2. Appellant filed a timely post-sentence motion, challenging the weight and sufficiency of the evidence and alleging that the verdict "was contradictory or not in conformity." Post-Sentence Motion, 5/9/24, ¶¶ 5-6. The trial court ordered a hearing on the motion. *See* Order (post-sentence motion hearing), 5/10/24, 1. On May 30, 2024, the court denied the post-sentence motion and granted Appellant's counsel permission to withdraw from representation. *See* Order (post-sentence motion denial), 5/30/24, 1; Order (petition to withdraw as counsel grant), 5/30/24, 1.

Appellant timely filed a notice of appeal and a court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[3] **See** Notice of Appeal, 6/6/24, 1; Order (Pa.R.A.P. 1925(b) statement), 6/7/24, 1; Rule 1925(b) Statement, 6/27/24, 1-2.

Appellant presents the following question for our review:

> Did the Common Pleas Court err in denying the Appellant's petition for a new jury trial where the evidence was insufficient to sustain a conviction of simple assault given the acquittals on terroristic threats and recklessly endangering another person?

Appellant's Brief, 4 (numbering, suggested answer, and unnecessary capitalization omitted).

Before we may address the substantive merits of the lone claim on appeal, we must address a pending application for relief before this Court. Appellant sought and received two extensions of time for the deadline for the filing of his brief. In response to the second request, we granted an extension until November 15, 2024, noting that "[n]o further extensions shall be granted absent extenuating circumstances." Superior Court Order, 10/16/24. Appellant filed his brief **seven minutes** beyond that deadline when he

---

[3] Appellant incorrectly identified the order on appeal in his notice of appeal as the order that denied his post-sentence motion. **See Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (recognizing that, "[i]n a criminal action, [an] appeal lies from the judgment of sentence made final by the denial of post-sentence motions") (citation omitted). Accordingly, the above caption and docket were corrected to reflect that Appellant's appeal lies from the May 3, 2024 judgment of sentence.

electronically filed his brief at 12:07:50 a.m. on November 16, 2024. The Commonwealth thereafter filed an application to quash this appeal because, *inter alia*, the filing of the brief seven minutes beyond the stated deadline. **See** Application to Quash Appeal, 12/16/24, §§ 9-10, 12. Appellant's counsel filed a response explaining that the delay in the filing of the brief was caused by "technical difficulties" with the uploading of the brief and asking this Court not to "dismiss this matter for counsel's failure to file [the] brief within the time as extended." Response to Application to Quash Appeal, 1/15/25, ¶¶ 5-6. The request to quash this appeal based on the late filing of Appellant's brief was deferred to the instant panel. **See** Superior Court Order, 1/28/25.

We acknowledge that the Commonwealth as appellee is permitted to seek dismissal based on an appellant's non-compliance with a briefing deadline. **See** Pa.R.A.P. 2188 ("If an appellant fails to file his … brief … within the time prescribed by these rules, or within the time as extended, an appellee may move for dismissal of the matter."). At the same time, we have previously declined to take the serious step of dismissing appeals based on noncompliance with briefing deadlines where the delay in filing has not substantially impeded the appellate process or caused prejudice to the appellee. **See Milshteyn v. Fitness International, LLC**, 271 A.3d 498, 502 n.4 (Pa. Super. 2022) (declining appellees' requests for dismissal or quashal based on appellants' filing of their brief one day late where appellees "failed to demonstrate the delay prejudiced them, or otherwise impede[d] our review of th[e] case"); **Clark v. Peugh**, 257 A.3d 1260, 1264 n.1 (Pa. Super. 2021)

(denying appellee's request for quashal based on appellant's two-week delay in filing his brief where our review "has not been substantially impeded by [appellant's] lack of compliance").

Here, the Commonwealth – which never filed a brief for this appeal – did not assert in its quashal request that the seven-minute delay in the filing of the Appellant's brief either prejudiced it or impaired this Court's ability to conduct review. We find no reason to find that the delay impedes our review. Given the *de minimis* filing delay at issue, we deny the application to quash this appeal and proceed with merits review.

Appellant claims that he should be granted a new trial because the evidence was insufficient to sustain his lone conviction for simple assault. Appellant's Brief, 11-13. Despite acknowledging that inconsistent verdicts are permissible in this Commonwealth, *id.* at 11, he proceeds to argue that the evidence was insufficient for simple assault because the conviction for that offense was inconsistent with his not guilty verdict for terroristic threats:

> The Appellant was charged in the criminal information with a specific section of the simple assault statute that charged [him] with an attempt by physical menace to put Mr. Frank in fear of imminent serious bodily injury by threatening to rob his cellphone after spitting in his face. This language mirrors that of the charge of terroristic threats in the criminal information. In finding that the Appellant did *not* communicate, either directly or indirectly, a threat to commit any crime of violence with intent to terrorize another, in that he threatened to rob Mr. Frank of his cell phone after spitting in his face, serious questions are raised as to whether the evidence is sufficient to find that the threatening to rob Mr. Frank of his cell phone after spitting in his face constitutes a substantial step in trying to cause fear of imminent serious bodily injury.

*Id.* at 13 (emphasis in original; unnecessary capitalization omitted).

As an initial matter, we are compelled to point out that Appellant seeks an improper remedy for his claim by requesting the grant of a new trial. The proper remedy for a meritorious challenge to the sufficiency of the evidence would be a discharge on the conviction at issue. *See Commonwealth v. Yanoff*, 690 A.2d 260, 263 (Pa. Super. 1997) ("if we find merit to Appellant's sufficiency claim, the proper remedy is discharge, not a new trial as requested by Appellant").

Moving to the substance of Appellant's claim for review, we note that it does not provide a clear theory for relief. Appellant simultaneously acknowledges the permissibility of inconsistent verdicts in our Commonwealth and then centers his theory for insufficient evidence for simple assault on the supposed inconsistency of his simple assault conviction with his acquittal for terroristic threats. *See* Appellant's Brief, 11-13. The existence of an inconsistent verdict, however, does not directly prove the lack of evidence to sustain a conviction because "an acquittal cannot be interpreted as a specific finding in relation to some of the evidence, and that even where two verdicts are logically inconsistent, such inconsistency alone cannot be grounds for a new trial or reversal." [4] *Commonwealth v. Miller*, 35 A.3d 1206, 1213 (Pa.

_____

[4] An exception to this rule concerning inconsistent verdicts exists, however, such that a conviction cannot stand on sufficiency grounds when there has been an acquittal on a predicate offense. *See Commonwealth v.*
*(Footnote Continued Next Page)*

2012). Rather, the defendant alleging the lack of insufficient evidence still bears the burden to engage in review, applying our sufficiency standard of review to the record at issue, to show that an element of his conviction(s) went unproven. *See Commonwealth v. Moore*, 103 A.3d 1240, 1242 n.3 (Pa. 2014) (noting "the United States Supreme Court has recognized that a court's review of the evidentiary sufficiency of a particular conviction is separate from its review of inconsistent verdicts, as sufficiency review entails an assessment of whether the evidence was sufficient for the jury to convict a defendant of a particular offense and is 'independent of the jury's determination that evidence on another count was insufficient'") (quoting *United States v. Powell*, 469 U.S. 57, 67 (1984)).

Our Courts have long understood: "a fact finder may render inconsistent verdicts," and "[a] jury's verdict in a criminal case will not be set aside merely because it appears to be inconsistent with another verdict of the jurors[, s]o long as the challenged verdict is supported by the evidence."

_____

*Magliocco*, 883 A.2d 479 (Pa. 2005). In *Magliocco*, our Supreme Court determined that a conviction for ethnic intimidation could not withstand review when a jury had acquitted the appellant for terroristic threats, where the commission of the offense of terroristic threats was specifically enumerated as an element of the crime of ethnic intimidation. *Id.* at 493; *but see Commonwealth v. Moore*, 103 A.3d 1240, 1247-48 (Pa. 2014) (noting that *Magliocco* was not so much an "exception" to the inconsistent verdict jurisprudence, but a "largely idiosyncratic" sufficiency challenge "that, critically [did] not entail jury inferences and so [was] not in conflict with the principle permitting inconsistent verdicts or its corollary that factual findings may not be inferred from a jury's acquittal"). Terroristic threats is not a predicate offense for simple assault.

*Commonwealth v. Taylor*, 471 A.2d 1228, 1231 (Pa. Super. 1984) (internal citations omitted); *see, e.g., Miller*, 35 A.3d at 1209 ("[T]he fact that the inconsistency [in the verdict] may be the lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable.").

To the extent that Appellant challenges the sufficiency of the evidence, he fails to conduct meaningful sufficiency review to allege any absence of evidence necessary to support his simple assault conviction. Instead, he merely suggests that his acquittal for terroristic threats raises "serious questions" as to whether the evidence was sufficient for simple assault. Appellant's Brief, 13. In his reasoning, the acquittal for terrorist threats meant the absence of a finding that he communicated a threat to commit any crime of violence with intent to terrorize another, whereas the simple assault conviction required evidence that he took a substantial step in trying to cause another to be in fear of imminent serious bodily injury and, here, that was alleged to be proven by his acts of threatening to rob Frank of his cell phone after he spit in Frank's face. Considered as a whole, Appellant's argument does not implicate the sufficiency of the evidence as it merely suggests the existence of an inconsistent verdict and, in contradiction of our inconsistent verdict jurisprudence, improperly asks us to draw factual inferences in relation to the evidence from the jury's decision to acquit him of terroristic threats.

In the absence of an attempt by Appellant to make pertinent arguments as to sufficiency of the evidence under our applicable standard of review for

that type of claim, we will not independently delve into sufficiency review *sua sponte*. ***See Commonwealth v. Kane***, 10 A.3d 327, 331 (Pa. Super. 2010) (this Court will not act as counsel and will not develop arguments on behalf of appellant, and where defects in brief impede our ability to conduct meaningful review, we may dismiss appeal entirely or find certain issues waived). We are able to rest the denial of relief on the instant claim on the basis that Appellant's argument as to the inconsistency of his jury's verdict does not implicate the sufficiency of the evidence. As such, we affirm the judgment of sentence.

Application to Quash Appeal denied.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/6/2025